IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAYSON POWELL, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PAUL DECARLO, et al., | : | No. 12-762 |
|     Defendants. | : | |

<u>MEMORANDUM</u>

**Schiller, J.**                                                                                                                                                                  **July 31, 2012**

      Jayson Powell asserts claims against the City of Philadelphia, the Philadelphia Police Department ("PPD"), Sergeant Paul DeCarlo, and Officers Paul Guercio, James Godfrey, and Frederick Girardo arising from an arrest that occurred beginning on February 28, 2010. He alleges that the officers violated his constitutional rights and committed various state law torts. The City of Philadelphia and PPD also have policies, according to Powell, that encourage their employees to commit constitutional violations. Defendants have filed a partial motion to dismiss, which the Court will grant in part and deny in part for the reasons that follow.

**I.    BACKGROUND**

      On February 27, 2010, Powell was in Philadelphia with friends celebrating his birthday. (Am. Compl. ¶¶ 6, 15.) On February 28, around 2 a.m., Powell and his friends left Table 31 at the Comcast Center, where they were "partying," to go to a nearby hotel. (*Id.* ¶¶ 15-16.) While walking to the hotel, they were approached from behind by Sergeant DeCarlo and Officer Guercio, who began pushing and yelling at the group. (*Id.* ¶¶ 17-18.) Powell and his friends were surprised by the officers' actions because they were not causing any commotion or being unruly. (*Id.* ¶¶ 18-20.)

Powell and his friends explained to the officers that they were just walking down the street, but an officer suddenly pushed Powell forward, slammed him to the ground, and arrested him. (*Id.* ¶¶ 20-21.) Powell tried to ask what he had done, but the officer cursed at him to be quiet. (*Id.* ¶ 22.) Powell was thrown into a police van and taken to a holding cell with the assistance of Officers Girardo, Frederick, and Godfrey. (*Id.* ¶ 23.) He remained in the holding cell overnight. (*Id.* ¶ 25.) By video conference, a judge informed Powell that he was charged with resisting arrest, disorderly conduct, and failure to disperse, and Powell was subsequently released. (*Id.* ¶¶ 26-27.)

Powell later had a hearing on the charges, in which the officers testified, as did one of Powell's friends. (*Id.* ¶¶ 35-36, 38-39, 41.) The arresting officer testified that Powell was in front of a club running around, yelling, and fighting, and that Powell jumped on top of another officer, putting the officer in a headlock. (*Id.* ¶ 38.) Powell was ultimately found not guilty of all charges. (*Id.* ¶ 42; Phila. Cnty. Ct. of Common Pleas Docket No. MC-51-CR-0008457-2010.)[1]

Powell began feeling pain in his left knee upon arriving in the holding cell following his arrest, and the pain continued after he was released. (Am. Compl. ¶¶ 24, 28.) An MRI revealed that Powell had suffered a meniscus tear, which would require surgery to repair. (*Id.* ¶¶ 47-49.)

In May 2010, Powell completed his academic studies and began pursuing post-graduate employment. (*Id.* ¶ 33.) Prior to his criminal trial, Powell sought to have the charges cleared to improve his chances at securing employment. (*Id.* ¶¶ 33-34.) Powell's job options were further

---

[1] The Court takes judicial notice of the criminal docket of the Philadelphia County Court of Common Pleas, which reveals that Powell had a preliminary arraignment on February 28, 2010 for charges of resisting arrest, disorderly conduct, and failure to disperse, and a trial, concluding on September 30, 2010, in which he was found not guilty on all charges. The docket is available at http://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber= MC-51-CR-0008457-2010.

limited due to increasing pain in his knee, which prevented him from standing for long periods at a time. (*Id.* ¶¶ 43-44.) The pain also forced him to reduce his hours at his part-time job at Best Buy. (*Id.* ¶ 44.)

Powell's Amended Complaint asserts a litany of claims, including violations of his civil rights and due process rights. (*Id.* ¶¶ 57-123.) He also claims Defendants violated Title VI of the Civil Rights Act (Count II), falsely arrested him under federal law (Count V), falsely arrested him and falsely imprisoned him under federal law (Count XIV), falsely arrested him under Pennsylvania law (Count VI), falsely imprisoned him under Pennsylvania law (Count X), and defamed him. (Count XIII). (*Id.*) Defendants' partial motion to dismiss seeks to dismiss these claims.

## II.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal

evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must make a commonsense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. *Id.*

### III.  DISCUSSION

#### A.  Title VI Claim

Defendants argue that Count II must be dismissed against PPD because Plaintiff has alleged no facts to state a claim under Title VI of the Civil Rights Act of 1964, and even if he could, there is no right of recovery for a private individual under the statute. (Defs.' Br. in Supp. of Defs.' Partial Mot. to Dismiss Counts II, V, X and XII, and all Claims Against the Phila. Police Dep't [Defs.' Br.] at 4.) Plaintiff responds that he has pled sufficient facts to state a claim and that, moreover, there is

a private right of action under Title VI. (Pl.'s Mem. of Law. in Opp'n to Defs.' Mot. to Dismiss [Pl.'s Mem.] at 7-11.)

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The statute implies a private right of action for victims of intentional discrimination, which is prohibited by Section 601 of Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001); *Barnes v. Gorman*, 536 U.S. 181, 185 (2002). Additionally, Section 602 of Title VI authorizes federal agencies "to effectuate the provisions of [Section 601] . . . by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute." 42 U.S.C. § 2000d-1. However, regulations promulgated pursuant to Section 602 cannot be enforced through a private cause of action. *Sandoval*, 532 U.S. at 293; *see also S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 781, 788 (3d Cir. 2001) (finding no private right of action to enforce a disparate impact regulation promulgated under Section 602 when the right "does not appear explicitly in the statute, but only appears in the regulation").

Powell alleges that PPD "developed and maintained a number of deficient customs, policies and/or practices, which proximately caused the deprivation of [his] constitutional rights . . . [and] encouraged its employees to believe that they could violate [his] constitutional rights," which he alleges constitutes a violation of Title VI. (Am. Compl. ¶¶ 64-66.) However, he fails to allege that PPD's customs, policies, or practices foster intentional discrimination. Rather, the Complaint offers conclusory allegations that PPD violated Title VI, but Powell fails to allege "any set of facts that indicate there was intentional discrimination on the "ground of race, color, or national origin," which

would violate Section 601. Furthermore, Powell also fails to allege any violation of a regulation promulgated under Section 602 of Title VI. Powell, however, contends that he sufficiently alleged discrimination, and he cites to cases that identify "retaliation" as a form of intentional discrimination. (Pl.'s Mem. at 10.) Assuming *arguendo* that Plaintiff correctly states the law, the factual allegations of the Complaint are entirely devoid of any reference, explicit or implicit, to retaliation by PPD. For these reasons, the Court will dismiss Count II.

### B.   False Arrest and False Imprisonment Claims

Defendants contend that Powell's claim for false arrest under federal law in Count V is identical to his claim for false arrest under federal law in Count XIV. (Defs.' Br. at 5.) Additionally, Defendants argue that Powell's claim for false imprisonment under state law in Count X is duplicative of his claim for false arrest under state law in Count VI. (*Id.* at 5-6.) Defendants also note that "[u]nder Pennsylvania law, false arrest and false imprisonment are nearly identical claims that are generally analyzed together." (*Id.*) Plaintiff responds with "[n]o argument as it pertains to the redundancy . . . [and] leave[s] it in the discretion of the Court." (Pl.'s Mem. at 11.)

#### 1.   *False Arrest and False Imprisonment under Federal Law*

Count V alleges false arrest under federal law on the ground that there a seizure under the Fourth Amendment occurred when Defendants criminally charged Plaintiff and required him to appear in court and participate in criminal court proceedings without probable cause. (Am. Compl. ¶¶ 80-81.) Count XIV alleges false arrest and false imprisonment pursuant on the ground that Defendants' acts caused Plaintiff to be wrongfully imprisoned when Defendants "knew or could have known that he was innocent." (*Id.* ¶¶ 118-119.) These two causes of action are based on different sets of conduct. The act constituting the "seizure" under Count V was Powell's criminal

prosecution—the duration of which extended from his preliminary arraignment on February 28, 2010, until his trial ended on September 30, 2010. (*Id.* ¶¶ 35-42.) by contrast, the imprisonment alleged in Count XIV is based on Powell's having been transported by a police van and held overnight in a holding cell. (*Id.* ¶¶ 23, 25.) While Count V's allegation that participation in a judicial proceeding constitutes a "seizure" is questionable, this alleged seizure is a separate occurrence from the transportation by police van and overnight imprisonment alleged in Count XIV. As Federal Rule of Civil Procedure 10 requires a plaintiff to state his claims in separate paragraphs, such that "each claim [is] founded on a separate transaction or occurrence," this Court does not find Counts V and XIV duplicative and will deny Defendants' motion to dismiss Count V. *See* Fed. R. Civ. P. 10(b); *see also Williamson v. Columbia Gas & Elec. Corp.*, 186 F.2d 464, 469 (3d Cir. 1950) (noting that "[t]he purpose of the requirement of separate counts is to clarify the issues and simplify the trial").

 2. *False Arrest and False Imprisonment under State Law*

Count VI alleges false arrest under Pennsylvania law based on Defendants criminally charging Plaintiff and requiring him to appear and court and participate in criminal court proceedings. (Am. Compl. ¶ 85.) Plaintiff alleges that Defendants lacked probable cause for this detention and that the illegal conduct was undertaken with actual malice or willful misconduct. (*Id.* ¶¶ 86, 87.) Count X, on the other hand, alleges false imprisonment, based on the fact that Defendants placed Plaintiff in custody and restricted his freedom of movement. (*Id.* ¶ 102.) Again, these two claims are based on different conduct, namely, the criminal prosecution and the imprisonment in the holding cell. Consequently, the Court will deny Defendants' motion to dismiss Count X.

 C. **Defamation Claim**

Defendants assert that Count XIII, alleging defamation, must be dismissed because

statements in criminal complaints are privileged and because police officers have immunity from claims of defamation. (Defs.' Br. at 6-7.) Count XIII of the Complaint alleges that Defendants filed "bogus criminal charges," which were "completely false for the sole purpose of depriving the Plaintiff of his good name and reputation." (Am. Compl. ¶¶ 113, 114.) Plaintiff also alleges in the Complaint's Statement of Facts that "[t]he arresting officer testified that Plaintiff was in front of the club running around, yelling, and fighting. He said that he somehow jumped on top of another officer and put this officer in a headlock and that he had to grab Plaintiff off of the police officer, tackle him to the ground and arrest him because of this." (*Id.* ¶ 38.) These statements, according to Plaintiff, "were made with knowledge of their falsity or with reckless disregard for their truth or falsity." (*Id.* ¶ 112.)

"Under Pennsylvania law, attorneys and parties to a judicial proceeding enjoy an absolute privilege against defamation suits for any statements made during the course of those proceedings." *Doe v. Kohn Nast & Graf, P.C.*, 866 F. Supp. 190, 194 (E.D. Pa. 1994) (citing *Binder v. Triangle Publ'ns, Inc.*, 275 A.2d 53, 56 (Pa. 1971)). This includes "statements by a party, a witness, counsel, or a judge . . . whether they occur in the pleadings or in open court." *Binder*, 275 A.2d at 56. The privilege extends to "those communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986). The privilege exists both to encourage witnesses' "complete and unintimidated testimony in court" and "because the courts have other internal sanctions against defamatory statements, such as perjury or contempt proceedings." *Id.* Furthermore, "witness immunity . . . extend[s] to pre-trial communications." *Moses v. McWilliams*, 549 A.2d 950, 958 (Pa. Super. Ct. 1988). This absolute privilege has been recognized in Pennsylvania for over a century. *See*

*Kemper v. Fort*, 67 A. 991, 994 (Pa. 1907).

Plaintiff alleges that Defendants filed "bogus" criminal charges and falsely testified in court. As these alleged communications are pertinent and material to charges of resisting arrest, disorderly conduct, and failure to disperse, the statements are absolutely privileged. However, it is unclear what Powell refers to by "bogus criminal charges." To the extent that Plaintiff refers to any communications made on February 28, 2010, that might not be privileged, any defamation claim would be time-barred. Under Pennsylvania law, defamation claims are subject to a one-year statute of limitation. 42 Pa. Cons. Stat. § 5523. Plaintiff was required to file an action prior to March 1, 2011, for any defamation claim based on statements made on February 28, 2010. However, Powell commenced this lawsuit on February 13, 2012. For these reasons, the Court will grant Defendants' motion to dismiss Count XIII.

### D.    Claims Against Philadelphia Police Department

Defendants argue—albeit in a footnote—that all claims against PPD should be dismissed because PPD does not have an independent corporate existence and that all claims against PPD must be brought in the name of the City. (Defs.' Br. at 2 n.1.) Plaintiff fails to respond to Defendants' argument.

The Court agrees that PPD does not have a separate corporate existence, and thus any claim against PPD is effectively a claim against the City of Philadelphia. 53 Pa. Stat. § 16257; *see also Regalbuto v. City of Phila.*, 937 F. Supp. 374, 377 (E.D. Pa. 1995) ("Defendants correctly argue that as a matter of law, the suit must be dismissed against the Philadelphia Police and Fire Departments because they are not separate legal entities that can be sued."). Therefore, the Court will dismiss all claims against PPD.

**IV.	CONCLUSION**

For the reasons stated above, Plaintiff has failed to state a claim under Title VI of the Civil Rights Act and under Pennsylvania law for defamation. The Court will therefore dismiss Counts II and XIII. The Court will deny Defendants' motion to dismiss Counts V and X. Finally, the Court will dismiss all claims against PPD. An Order consistent with this Memorandum will be docketed separately.